IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CASSIDY BROTHERS REAL ESTATE DEVELOPMENT COMPANY, TERRANCE L. CASSIDY, SR and HELEN CASSIDY,<br><br>*Plaintiffs*,<br><br>v.<br><br>SCOTT TOWNSHIP and WILLIAM WELLS *in his official and individual capacity*,<br><br>*Defendants*. | Civil Action No. 2:20-cv-744<br><br>Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, District Judge

Plaintiffs Cassidy Brothers Real Estate Development Company ("the Company"), Terrance L. Cassidy, Sr. ("T. Cassidy"), and Helen Cassidy ("H. Cassidy") brought this action against Defendants Scott Township and William Wells on May 20, 2020. (ECF No. 1). An Amended Complaint was filed on June 18, 2020. (ECF No. 2). Then, on October 6, 2020, a Second Amended Complaint was filed. (ECF No. 20). Defendants filed a Motion to Dismiss Plaintiffs' Second Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) along with a supporting brief. (ECF Nos. 20 and 21). Briefing has concluded, and Defendants' motion is ripe for disposition. Defendants' motion will be granted in part and denied in part for the following reasons.

### I.   STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A

1

plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *see also DiCarlo v. St. Marcy Hosp.*, 530 F.3d 255, 262-63 (3d Cir. 2008). Although this Court must accept the allegations in the Complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

## II. FACTUAL BACKGROUND

T. Cassidy is the owner of Cassidy Brothers Real Estate Development Company ("Company"), which he incorporated in 2018, he is the brother of the deceased Patrick Cassidy ("P. Cassidy") and brother-in-law of Helen Cassidy ("H. Cassidy"). He is "permanently disabled due to injuries he sustained, [including] but not limited to a spinal cord injury." From 2011 to 2018, T. Cassidy "received excessive and unnecessary notices of code violations" from Scott Township about a property of his parents (that he purchased "in or about 2017"). It is alleged that William Wells ("Wells"), in his capacity as commissioner for Scott Township, instructed Scott Township employees to "issue these excessive notices of code violations and/or dictated the language within these letters." According to Plaintiffs, "other similarly situated individuals were not subjected to such excessive and unnecessary notices of code violations […]." (ECF No. 18, ¶¶ 5-7, 11, 13-15, 19, 21).

Plaintiffs contend that "Defendant Wells and/or Defendant Township's harassment of Plaintiff T. Cassidy is a direct and proximate result of Plaintiff T. Cassidy's disability." Wells

had knowledge of T. Cassidy's disability and is alleged to have "made statements to individuals in the community on multiple occasions that Plaintiff T. Cassidy is not disabled." Furthermore, Wells' is alleged to have "communicated his animosity toward Plaintiff T. Cassidy," to "multiple members of the community," and made statements like he "wishes [Plaintiff T. Cassidy] would die." (ECF No. 18, ¶¶ 16-18).

In May of 2018, the residence located on H. Cassidy's and P. Cassidy's property in Scott Township was destroyed by fire. They contracted with the Company to demolish the remainder of the structure and build a new home. In June of 2018, T. Cassidy, on behalf of the Company, applied for a permit with Scott Township to demolish the remainder of the structure. A permit was not issued "for approximately four (4) to six (6) weeks." The township's enforcement officers, Bob Fisher ("Fisher") and Todd Tulowitzki ("Tulowitzki") informed T. Cassidy on multiple occasions that Wells "held up" the demolition permit. Plaintiffs submit that T. Cassidy "intentionally interfered with the issuance of a demolition permit" as a result of his "animosity" toward T. Cassidy "and/or" his disability. Furthermore, Plaintiffs contend that "other similarly situated companies and/or property owners were granted demolition permits by Defendant Township in significantly shorter amounts of time than the amount of time in which the Plaintiffs were subjected." Additionally, they submit that T. Cassidy was denied access to a demolition permit "as a direct and proximate result of his disability." (ECF No. 18, ¶¶ 20-28).

In June of 2018, T. Cassidy, on behalf of Company, applied for a building permit with Scott Township to build a new home on H. Cassidy's and P. Cassidy's property. The Company also entered into various business relationships to build on the property (e.g., electrical, heating, ventilation, and air conditioning contracts). Defendants were aware of these relationships as T. Cassidy communicated this information to Fisher and/or Tulowitzki and the men made multiple

visits to the property. Wells is alleged to have said to Scott Township's manager that T. Cassidy, and not the Company, was executing the build and "did not have the proper insurance for the demolition and/or building." However, T. Cassidy had presented the Company's insurance information to Wells. (ECF No. 18, ¶¶ 31-35).

In August of 2018, before Scott Township would permit the Company to build on H. Cassidy's and P. Cassidy's property, Defendants required P. Cassidy to sign a contract with Scott Township that included a timeline for when the structure was to be built. Fisher and/or Tulowitzki informed T. Cassidy on "multiple occasions" that such a contract was "not a common occurrence," and Plaintiffs assert that "other similarly situated companies and/or property owners were not required to sign contracts" with Scott Township to receive building permits. (ECF No. 18, ¶¶ 36-38).

The building permit was not issued by Scott Township until September of 2018, and it is alleged to have been "held up" by Wells. Plaintiffs contend that "other similarly situated companies and/or property owners were granted building permits [. . .] in significantly shorter amounts of time." T. Cassidy asserts that he was "denied access to a building permit" as a "direct and proximate result of his disability." (ECF No. 18, ¶¶ 40-42).

P. Cassidy died on November 24, 2018. In May of 2019, Scott Township began citing H. Cassidy for having an "unsafe structure on her property." She received letters from Scott Township threatening legal action because the contract was violated and no structure was built on her property. In May of 2019, H. Cassidy gave T. Cassidy power of attorney to represent her in matters concerning her property. (ECF No. 18, ¶¶ 48-53). T. Cassidy appeared nine times before a magisterial district judge from May to October of 2019 "as a direct and proximate result

of the letters and/or citations issued to Plaintiff H. Cassidy regarding her property […]." (ECF No. 18, ¶¶ 54).

On May 25, 2020, Scott Township's code enforcement officer contacted T. Cassidy's real estate agent and threatened to "cite and/or fine" Plaintiffs for high grass on H. Cassidy's property. T. Cassidy contacted a representative of Scott Township to complain about the code enforcement officer's conduct. Additionally, he contacted the commissioners to ascertain if other Scott Township properties had been cited for high grass. T. Cassidy learned that properties at 700 Doolittle Street, 117 Magazine Street and 526 Noblestown Road were not contacted or cited for their high grass. (ECF No. 18, ¶¶ 55-59).

### III. ANALYSIS

#### A. *42 U.S.C. § 1983 claims – Counts I and III*

42 U.S.C. § 1983 provides a cause of action against any person who, acting under the color of state law, deprives another of his or her federal rights, and, under certain circumstances, the municipal employer and/or supervisor of such a person. To obtain relief under § 1983, a plaintiff must make a two-prong showing: (1) that s/he suffered a violation of a right secured by the Constitution and laws of the United States; and, (2) that the alleged deprivation was committed by a person acting under the color of state law. *See Karns v. Shanahan*, 879 F.3d 504, 520 (3d Cir. 2018) (citations omitted).

##### 1. *Count I - Equal Protection.*

In Count I, the Company and H. Cassidy sued Wells in his individual capacity[1] and Scott Township. Plaintiffs assert a class of one equal protection violation claim. They allege

---

[1] Wells was a Scott Township commissioner at the time of the events recounted in the Second Amended Complaint. Individual capacity claims under section 1983 "seek to recover money from a government official, as an individual, for acts performed under color of state law." *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988). To plead a sufficient civil rights claim

5

Defendants "refused to issue demolition and building permits for Plaintiff H. Cassidy's property" "for a significant amount of time" and that "other similarly situated companies and/or property owners" were granted demolition and/or building permits by Scott Township in "significantly shorter amounts of time." According to Plaintiffs, Wells, as a decision-maker for Scott Township, intentionally interfered because of his "animosity toward Plaintiff T. Cassidy and/or Plaintiff T. Cassidy's disability [...]." (ECF No. 18, ¶¶ 62-66). Plaintiffs allege that Defendants violated their rights under the Equal Protection Clause of the Fourteenth Amendment.

The Equal Protection Clause provides no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It requires state actors to treat all "similarly situated" persons alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "[T]o state a claim for 'class of one' equal protection, a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008). "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Philadelphia, Pa.*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Norlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

While the ultimate burden of proof and persuasion on a class of one equal protection claim is very exacting, the Court is not called upon at this time to evaluate the merits of this claim. When considering the motion to dismiss, the Court's task is simply to assess whether

---

against a defendant in his individual capacity, a plaintiff must show that the defendant had "personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citation omitted); *see also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (dismissing claims against Attorney General for failing to describe his personal involvement). Personal involvement can be shown by alleging either personal direction or actual knowledge of and acquiescence in a subordinate's actions. *Rode*, 845 F.2d at 1207. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. *Id.*

Plaintiffs' Second Amended Complaint satisfies a plausibility standard that merely requires Plaintiffs to allege enough facts to state a claim to relief that is plausible on its face.

As to Plaintiffs' allegations against Wells, the Court finds sufficient factual matter has been alleged from which it could plausibly be inferred that Plaintiffs were intentionally treated differently in the permit process than "other similarly situated companies and/or property owners" without any rational basis. Whether another company is "similarly situated" is a fact intensive inquiry that is difficult to resolve at the motion to dismiss stage. *Chan v. Cnty. of Lancaster*, No. 10-3424, 2011 WL 4478283, at * 15 (E.D. Pa. September 26, 2011). "For that reason, some courts in this Circuit have stated that 'a final determination of this issue is inappropriate at the motion-to-dismiss stage.'" *Thomas v. Coopersmith*, No. 11-7578, 2012 WL 3599415, at *5 (E.D. Pa. Aug. 21, 2012) (quoting *Chan*, 2011 WL 4478283, at * 15). While Plaintiffs' allegations herein may be conclusory, the Second Amended Complaint, at a minimum, raises the question of whether Wells used the permitting process against Plaintiffs in a discriminatory or different fashion. Plaintiffs' equal protection claim against Wells can proceed as their allegations are sufficient to state a claim upon which relief may be granted. They have sufficiently alleged disparate treatment and that there was no rational basis for such treatment. Whether Plaintiffs can prove what they have alleged remains to be seen, but the motion to dismiss will be denied as to Count I against Wells.

As to Plaintiffs' allegations against Scott Township, a municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*. *Id*. at 691. Rather, "under § 1983, local governments are responsible only for 'their *own* illegal acts.'" *Connick v.*

*Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)) (emphasis in original). In order to prove a § 1983 claim against a municipality, a plaintiff must demonstrate that her constitutional deprivations were caused by an official policy or custom of the municipality or a failure by the municipality to train its employees. *Id.*; *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A municipal policy is "a 'statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers.'" *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1059 (3d Cir. 1991) (alteration in original) (quoting *Monell*, 436 U.S. at 690). A custom, on the other hand, "is an act 'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'" *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (citation omitted).

"To satisfy the pleading standard, [Plaintiffs] must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). Additionally, there must be a direct causal link between the policy or custom and the alleged constitutional violation. *City of Canton*, 489 U.S. at 385. Plaintiffs have failed to identify a municipal policy or custom that led to the alleged constitutional violation. Aside from dubbing Wells a "decision-maker," the allegations fail to link an offending policy or custom to him or sufficiently articulate the specifics of a deliberate decision made by Wells. Plaintiffs have failed to set forth any facts that plausibly show the existence of relief against Scott Township under *Monell*. The Court will dismiss Count I against Scott Township without prejudice. Plaintiffs will be permitted to file a Third Amended Complaint.

### *2. Count III – First Amendment Retaliation.*

Count III, a First Amendment retaliation claim, was filed by H. Cassidy against Defendants. In footnote 1 of her Brief in Opposition to Defendants' Motion to Dismiss, H. Cassidy states she is withdrawing her claim against Defendants at Count III. (ECF No. 25, p. 2, n. 1). The Court's Practices and Procedures state, "[i]f a party wishes to voluntarily withdraw a claim in response to a motion to dismiss, they shall file a notice of withdrawal of record." *https://www.pawd.uscourts.gov/sites/pawd/files/Stickman_2020_Policies_Procedures.pdf.* This is in concert with Fed. R. Civ. P. 15(a), which states that a plaintiff wishing to withdraw particular claims without prejudice must amend the complaint pursuant to Fed. R. Civ. P. 15(a). *Rosario v. Strawn*, No. 19-1040, 2020 WL 5810009, at *4 (W.D. Pa. Sep. 30, 2020). *See also Center for Orthopedics and Sports Medicine v. Horizon*, No. 13-1963, 2015 WL 5770385, at *2 (D.N.J. Sept. 30, 2015) (same); *Waris v. Mackey*, No. 09-1103, 2009 WL 4884204, at *4 (E.D. Pa. Dec. 15, 2009) (same); *Chan v. Cty. of Lancaster*, No. 10-03424, 2013 WL 2412168, at *16 (E.D. Pa. Jun. 4, 2013) (same); 9 CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 2362 (3d ed. 2008) (same). This policy fosters clarity for the parties and the Court as to which claims remain in an action.

Although H. Cassidy's attempted withdrawal of Count III is improper, and, therefore, the merit of Defendants' motion to dismiss Count I is still before the Court, it will nevertheless honor the withdrawal and dismiss Count I. Established caselaw dictates that the relationship pled in this case, siblings-in-law, is an insufficient familial association to form the basis of a First Amendment claim. Count III will be dismissed with prejudice.

### B. *Count II – Violation of the Americans with Disabilities Act*

Count II was filed by T. Cassidy against Defendants. It alleges that Defendants violated his rights under Title II of the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 12201 *et seq.* More specifically, T. Cassidy alleges he has a permanent physical disability under the ADA and that he was denied access to demolition and/or building permits because of his disability. (ECF No. 18, pp. 12-13).

Congress enacted the ADA to eliminate discrimination based on disability. But the ADA does not cover every instance of such discrimination. Rather, it covers such discrimination in at least three situations, each of which is assigned its own "title" or subsection of the ADA statute. *Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 433 (3d Cir. 2003). Title II, which T. Cassidy alleges was violated, prohibits discrimination by a "public entity." 42 U.S.C. § 12132. It "addresses discrimination by governmental entities in the operation of public services, programs, and activities, including transportation." *Buchanan v. Maine*, 469 F.3d 158, 170 (1st Cir. 2006). To successfully state a claim under Title II of the ADA, a person must demonstrate: (1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability. *Haberle v. Troxell*, 885 F.3d 170, 178–79 (3d Cir. 2018).

As to T. Cassidy's ADA claim against Wells in his individual capacity, in footnote 2 of his Brief in Opposition to Defendants' Motion to Dismiss, T. Cassidy states he is withdrawing his claim against Wells. (ECF No. 25, p. 2, n. 2). As with Count III, this is an improper method to withdraw a claim and Defendants' motion to dismiss this claim remains before the Court. However, the Court will honor the withdrawal as Wells is not a "public entity" subject to suit

10

under Title II of the ADA. 42 U.S.C. § 12132. Accordingly, Count II against Wells will be dismissed with prejudice.

As to Count II against Defendant Scott Township, the Court finds that T. Cassidy has failed to plead any act of discrimination within the meaning of the ADA. While T. Cassidy has adequately alleged that he suffered from a disability and Scott Township is a public entity, T. Cassidy has not recited well-pleaded facts that give rise to an inference that he was discriminated against because of his disability. In order to state a valid cause of action, T. Cassidy must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. All he has pled is that he was denied timely access to demolition and/or building permits "as a direct and proximate result" of his disability. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* In its current form, T. Cassidy's claim against Scott Township fails to meet this threshold standard for pleading an ADA claim. Therefore, T. Cassidy's claim against Scott Township will be dismissed without prejudice with leave to amend.

### C. State Tort Claims – Counts IV and V

In Count IV, the Company and H. Cassidy have alleged the tort of intentional interference with a business relationship against Wells. They allege that the Company entered into a business relationship with H. Cassidy to demolish the structure and build a residence on her property, that Wells was aware of this relationship, and that he intentionally interfered with the issuance of demolition and building permits to the Company. According to Plaintiffs, they "were unable to build a residence on the property in 2018 and suffered significant financial losses." (ECF No. 18, ¶¶ 87-91). In Count V, the Company alone alleges the tort of intentional

interference with a business relationship against Wells. The Company states it "entered into several business relationships in order to build a residence on Plaintiff H. Cassidy's property,"[2] and Defendant Wells was aware of these relationships because T. Cassidy communicated this information to several of Scott Township's employees. According to the Company, Wells intentionally interfered with these relationships by delaying the timely issuance of demolition and building permits and that "Plaintiffs were unable to build a new home on the property in 2018 and suffered significant financial losses." (ECF No. 18, ¶¶ 94-98).

Under Pennsylvania state law, the tort of intentional interference with business relations requires four elements:

> (1) the existence of a contractual, or prospective contractual, relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Pawlowski v. Smorto*, 588 A.2d 36, 39-40 (Pa. Super. 1991). *See also Al Hamilton Contracting Co. v. Cowder*, 644 A.2d 188, 191 (Pa. Super. 1994). Thus, a business relationship must be alleged with some degree of specificity, and a cause of action will not stand unless there has been some act by the defendant which served to deprive the plaintiff of some benefit to which he was entitled by contract. *Keifer v. Cramer*, 51 A.2d 694, 695 (Pa. 1947). "[T]he gravamen of this

---

[2] Within the Factual Allegation portion of the Second Amended Complaint, Plaintiffs assert that "Plaintiff Company entered into several business relationships involving the build on the property, included, but not limited to, contracting agreements with Christian Miele to perform electrical work on the property and Frank Hutchinson to install the heating, ventilation, and air conditioning system." (ECF No. 18, ¶ 32). T. Cassidy "communicated this information to several of Defendant Township's employees, including but not limited to Mr. Fisher and/or Mr. Tulowitzki" and when these men visited the property the business relationships "were expressly discussed." (ECF No. 18, ¶¶ 32-33).

tort is the lost pecuniary benefits following from the [lost] contract...." *Pelagatti v. Cohen*, 536 A.2d 1337, 1343 (Pa. Super. 1987), *allo. denied*, 548 A.2d 256 (Pa. 1988).

The Court finds that Plaintiffs have adequately pled the existence of business relationships in Counts IV and V, and that Wells was aware of those relationships. While the facts pled as to how Wells held up the issuance of permits and how he intended to harm Plaintiffs' business relationships are scant, the Court nevertheless holds that what Plaintiffs have alleged at the pleading stage is sufficient. They have adequately set forth a claim for intentional interference with business relationships. Whether Plaintiffs can prove what they have alleged remains to be seen, but the Court will deny the motion to dismiss as to Counts IV and V.

## IV. CONCLUSION

For the foregoing reasons of law and fact, Defendants' Motion to Dismiss will be granted in part and denied in part. Plaintiffs will be afforded twenty-one days to file a Third Amended Complaint as to those counts that will be dismissed without prejudice. An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

1/26/2021
Date